**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| SMASH PARK IP, LLC, SMASH PARK HOLDINGS, LLC, and SMASH PARK MINNEAPOLIS 1, LLC, <br><br> Plaintiff, <br><br> v. <br><br> QUANTUM SPORTS LLC, <br><br> Defendant. | CASE NO. _____ <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Smash Park IP, LLC, Smash Park Holdings, LLC, and Smash Park Minneapolis 1, LLC (collectively, "Smash Park"), for their Complaint and Demand for Jury Trial against Defendant, Quantum Sports LLC d/b/a SmashHub ("Smash Hub"), state and allege as follows:

**PARTIES, JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, specifically the Lanham Act, and under 28 U.S.C. 1338(a) because this action involves claims of trademark infringement and unfair competition under federal law.

2. Additionally, this Court has supplemental jurisdiction over all other claims in this case in this action pursuant to 28 U.S.C. § 1367(a), as these claims are so related to the claims within the Court's original jurisdiction and form part of the same case or controversy.

3. Plaintiff, Smash Park IP, LLC, is an Iowa limited liability company with an address of 1210 Office Plaza Dr., West Des Moines, IA, 50266.

4. Plaintiff, Smash Park Holdings, LLC, is an Iowa limited liability company with an address of 1210 Office Plaza Dr., West Des Moines, Iowa, 50266.

5. Plaintiff, Smash Park Minneapolis 1, LLC, is a Minnesota limited liability company with an address of 525 Park Street, Suite 247, Saint Paul, Minnesota, 55103.

6. Defendant, Quantum Sports LLC (Smash Hub), is a Minnesota limited liability company with an address of 9785 Ambrose Rd., Woodbury, Minnesota, 55129.

7. This Court has personal jurisdiction over Smash Hub, who has the requisite minimum contacts with the State of Minnesota necessary to satisfy the due process requirements of the United States Constitution. Specifically, Smash Hub is "at home" in Minnesota.

8. Further, Smash Hub has purposefully availed itself of the privilege of conducting business in Minnesota, including the business at issue in this Complaint, by being registered to do business in Minnesota with Minnesota Secretary of State and owning and operating an indoor pickleball and recreational sports facility in Minnesota.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as Smash Hub resides in the State of Minnesota and a substantial part of the events or omissions giving rise to the claims in this Complaint occurred in this judicial district. Specifically, Smash Hub owns and operates an indoor pickleball and recreational sports facility in this district which gives rise to the claims of this complaint.

## FACTS COMMON TO ALL COUNTS

10. Smash Park operates recreational pickleball facilities and restaurants in the States of Iowa, Nebraska, and Minnesota.

11. Smash Park filed the Articles of Organization for Smash Park Minneapolis 1, LLC with the Minnesota Secretary of State on March 12, 2022. Smash Park filed a Certificate of Assumed Name Registration for "Smash Park" on July 2, 2024.

12. Smash Park owns various federal trademark registrations including: U.S. Reg. No.

5,868,968 for the "SMASH PARK" mark; U.S. Reg. No. 6,051,018 for the "SMASH PARK" mark; U.S. Reg. No. 6,074,324 for the [SMASH PARK] mark; and U.S. Reg. No. 6,074,308 for the [SMASH PARK —PLAY·DRINK·EAT—] mark; each of which are used in connection with Smash Park's pickleball and other entertainment, restaurant, and bar services.

13.     Over the years, Smash Park has also used variations or derivatives of the SMASH PARK Mark such as SMASH PARK PLAY DRINK EAT and has been included in marks consisting of the words "SMASH PARK" along with design aspects.

14.     In an effort to continue to protect and ensure its exclusive use of the SMASH PARK Mark, Smash Park filed U.S. App. Serial No. 87/659,709 for the mark "SMASH PARK" which was filed as an intent-to-use application under Section 1(b) of the Lanham Act, 15 U.S.C. § 1051(b). On July 10, 2019, a Statement of Use and Specimen showing use of the "SMASH PARK" mark were filed with a claimed date of first use in commerce of September 7, 2018. Subsequently, U.S. Reg. No. 5,868,968 was issued on September 24, 2019.

15.     Smash Park has continuously and consistently used the trademark "Smash Park" in connection with its entertainment, restaurant, and bar services since at least 2018 with earliest use of the mark dating back to April of 2017.

16.     Smash Park opened a location at 1721 County Rd C West, Roseville, MN 55113 in the fall of 2023. Smash Park's Roseville location utilizes the SMASH PARK marks and offers pickleball courts, restaurant and bar services, cornhole, darts, and other games and entertainment, as well as weekly events and watch parties for various shows and sporting events.

17.     Smash Park utilizes the SMASH PARK marks in connection with the marketing of its goods and services on its website found at https://smashpark.com/. Smash Park also runs various social media accounts for its various locations, all utilizing one or more of the SMASH

PARK marks, on Facebook, Instagram, TikTok, and LinkedIn.

18.  Defendant filed its Articles of Organization for Quantum Sports LLC with the Minnesota Secretary of State on January 19, 2024. Defendant subsequently filed a Certificate of Assumed Name Registration for "SMASHHUB" on March 28, 2024.

19.  Smash Hub does not have any registered trademarks at the United States Patent and Trademark Office and Smash Hub has not filed any trademark applications with the United States Patent and Trademark Office.

20.  In December 2024, Smash Hub opened an establishment located at 895 Hale Ave. N, Oakdale, MN 55128. The Smash Hub establishment has indoor pickleball courts, an indoor soccer turf, a party room, a café and bar, and a pro-shop and lounge. Smash Hub utilizes the SMASH HUB marks in connection with its establishment.

21.  Smash Hub utilizes its SMASH HUB marks in connection with the marketing of its goods and services on its website found at [https://smashhub.com/](https://smashhub.com/). Smash Hub also runs various social media accounts utilizing the SMASH HUB marks on Facebook and Instagram.

22.  On December 11, 2024, counsel for Smash Park sent Smash Hub a letter demanding that Smash Hub cease and desist its use of its SMASH HUB marks. Smash Hub responded to Smash Park's letter indicating that it would not cease its use of the SMASH HUB marks.

**COUNT I – FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114**

23.  Smash Park re-alleges and incorporates by reference the other paragraphs of this Complaint as it fully sets forth herein.

24.  SMASH PARK is a valid and enforceable trademark owned by Plaintiffs.

25.  The SMASH PARK marks are strong and inherently distinctive marks and consumers recognize the SMASH PARK marks as identifying Smash Park as the source of its

entertainment, restaurant, and bar services.

26. The SMASH HUB marks are extremely similar in sound, appearance, and commercial impression to the SMASH PARK marks such that it is likely, when used on or in connection with Smash Hub's services, that consumers will falsely believe that Smash Hub's services are sponsored, endorsed, or approved by Smash Park, or are in some way affiliated, connected, or associated with Smash Park.

27. The SMASH PARK marks and the SMASH HUB marks each begin with the dominant term "SMASH". Consumers are likely to remember the "SMASH" portion of the parties' respective marks and consumers are likely to be confused as to the source of the goods and services offered under the parties' respective marks. For example, recent Google search results confuse the two companies and their respective owners. On information and belief, actual confusion among consumers is already occurring.

28. The parties' respective marks are used to promote identical, competing services. More specifically, Smash Park and Smash Hub use their respective marks in connection with entertainment services (which primarily revolve around pickleball and similar games and entertainment) as well as restaurant (or café) and bar services.

29. Smash Park and Smash Hub are in direct competition for the same customers as they offer identical services in the Twin Cities metro area. Specifically, the Smash Park and Smash Hub locations in Minnesota are less than 20 miles apart.

30. As shown in Exhibits 1, 2, and 3, if a consumer were to Google the ownership of Smash Hub, the consumer would receive confusing search results that conflate the ownership of the Smash Park with the ownership of Smash Hub. Exhibits 1, 2, and 3 demonstrate there is a high likelihood of confusion as to the relationship between the entities and consumers are likely to

believe Smash Hub is owned and operated by the same entity that owns Smash Park.

31. There is a low degree of care expected for consumers who are searching for indoor, recreational pickleball facilities.

32. Unless enjoined, the continued use of SMASH HUB will continue to confuse consumers and weaken the strong brand identity and goodwill that Smash Park has built through its use of the SMASH PARK marks.

33. Smash Hub's use of the mark constitutes trademark infringement under 15 U.S.C. § 1114.

## COUNT II – FEDERAL UNFAIR COMPETITION UNDER 15 U.S.C. § 1125

34. Smash Park re-alleges and incorporates by reference the other paragraphs of this Complaint as if fully set forth herein.

35. The SMASH PARK marks are strong and inherently distinctive marks and are valuable source identifiers of the goods and services provided by Smash Park.

36. Smash Hub's use of the SMASH HUB marks in connection with Smash Hub's services are likely to cause confusion, mistake, or deceive consumers and members of the public to believe that Smash Hub's services are sponsored, endorsed, or approved by Smash Park, or are in some way affiliated, connected, or associated with Smash Park.

37. Smash Park has not authorized Smash Hub's use of confusingly similar marks with non-Smash Park goods and services.

38. Smash Hub's deceptive acts have injured Smash Park in an amount to be determined at trial.

39. Unless enjoined, the continued use of SMASH HUB would continue to confuse consumers and weaken the strong brand identity and goodwill that Smash Park has built through

6

its use of the SMASH PARK marks.

### COUNT III – MINNESOTA UNFAIR COMPETITION (MINN. STAT. § 333.18 *et. seq.*)

40. Smash Park re-alleges and incorporates by reference the other paragraphs of this Complaint as if fully set forth herein.

41. Smash Hub has engaged in and continues to engage in practices that violate Minn. Stat. § 333.28 and its prohibition against using a similar mark that would cause a likelihood of confusion amongst consumers.

42. Smash Hub has consistently used a mark in Minnesota that is likely to cause confusion regarding the source of its goods and services.

43. In using the SMASH HUB mark, Smash Hub has deceived consumers as to the source or origin of its goods and services such that a consumer could falsely believe Smash Hub's services are sponsored, endorsed, or approved by Smash Park, or are in some way affiliated, connected, or associated with Smash Park.

44. Smash Hub has colorably imitated the SMASH PARK mark to be used in conjunction with the sale and distribution of its goods and services.

45. Unless enjoined, Smash Hub's continued infringement of the SMASH PARK marks would confuse consumers as to the source of services provided and weaken Smash Park's brand identity and goodwill Smash Park has built through its use of the SMASH PARK marks.

46. Pursuant to Minn. Stat. § 333.29, Smash Park is entitled to injunctive relief and either (1) all profits derived from Smash Hub's wrongful manufactures, uses, displays, or sales; or (2) all damages suffered by reason of the wrongful manufactures, uses, displays, or sales.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Smash Park IP, LLC, Smash Park Holdings, LLC, and Smash

Park Minneapolis 1, LLC, respectfully prays this Court enter judgment in its favor and against Defendant, Quantum Sports LLC, on the Federal Trademark Infringement claim, and in doing so further prays that this Court:

    a. Temporarily and permanently enjoin Defendant, Quantum Sports LLC, and their officers, employees, agents, attorneys, successors-in-interest, and those acting in concert with Defendant from using the mark "Smash Hub" or other confusingly similar marks including any mark which consists of or includes the term "smash", in connection with any entertainment or game establishment (including, but not limited to, any establishments which have pickleball courts), and any restaurant or bar establishments in accordance with Fed. R. Civ. P. 65 and 15 U.S.C. § 1116;

    b. Order Defendant to deliver up for destruction all building plaques, signs, materials, advertisements, prints, cards, leaflets, brochures, hand bills, gift cards, coupons, and all other goods and materials in its possession or control which bear the SMASH HUB marks (including any derivative thereof), or any other name or mark confusingly similar to the SMASH PARK marks including any mark which consists of or includes the term "smash", or any other reproduction, counterfeit, copy, or colorable imitation of the SMASH PARK marks in accordance with 15 U.S.C. § 1118;

    c. Order Defendant to file with this Court and serve on Plaintiffs a report setting forth the manner and form in which compliance with the injunction has been made in accordance with 15 U.S.C. § 1116;

    d. Order Defendant, Quantum Sports LLC, to pay to Plaintiff, Smash Park Holdings, LLC, an accounting for any profits arising from the foregoing acts of trademark

      infringement and that such profits be trebled in accordance with 15 U.S.C. § 1117;

e. Order Defendant, Quantum Sports LLC, to pay to Plaintiff, Smash Park Holdings, LLC, all damages suffered by Plaintiff including compensatory damages and punitive damages, by reason of the foregoing acts of trademark infringement, and that such damages be trebled in accordance with 15 U.S.C. § 1117;

f. Order Defendant, Quantum Sports LLC, to pay all costs, attorneys' fees and expenses incurred by Plaintiff, Smash Park Holdings, LLC, in relation to this lawsuit is accordance with 15 U.S.C. § 1117;

g. Order Defendant, Quantum Sports LLC, to pay (1) all profits derived from Smash Hub's wrongful manufactures, uses, displays, or sales; or (2) all damages suffered by reason of the wrongful manufactures, uses, displays, or sales, in accordance with Minn. Stat. § 333.29.

h. Order Defendant, Quantum Sports LLC, to pay pre-judgment and post-judgment interest at the maximum rate allowed under applicable law; and

i. Order all such other and further relief as this Court may deem just and proper under the circumstances.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a jury trial on all issues that are triable by jury under the law.

Dated: June 25, 2025

Respectfully submitted,

*/s/ Kyle R. Kroll*
Kyle R. Kroll, #0398433
Timothy D. Sitzmann, #0392464
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402
Telephone: (612) 604-6598
Facsimile: (612) 604-6800
kkroll@winthrop.com
tsitzmann@winthrop.com

— and —

Michael A. Dee, AT0002043
    *Pro hac vice forthcoming*
Jordan Meggison-Decker, AT0011422
    *Pro hac vice forthcoming*
Rebecca E. Coleman, AT0015953
    *Pro hac vice forthcoming*
BROWN, WINICK, GRAVES, GROSS AND BASKERVILLE, P.L.C.
666 Grand Avenue, Suite 2000
Des Moines, Iowa 50309-2510
Telephone: 515-558-8851
Facsimile: 515-283-0231
michael.dee@brownwinick.com
jordan.decker@brownwinick.com
becca.coleman@brownwinick.com

31991325v3